**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**MELVIN L. SHIELDS,**

      **Plaintiff,**

      v.                                      **CASE NO.  23-3183-JWL**

**UNITED GOVERNMENT OF
WYANDOTTE COUNTY, et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Melvin L. Shields is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.  Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

## I.  Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is in custody at the Hutchinson Correctional Facility in Hutchinson, Kansas.  Plaintiff has paid the filing fee.

Although Plaintiff's Complaint is on a court-approved form, he merely uses the form to refer to an attached affidavit and exhibits consisting of over 160 pages.  Plaintiff's claims relate to his state criminal proceedings and conviction.  *See* Doc. 1–1.  Plaintiff made similar claims in Case No. 22-3298.[1]

---

[1]  The Court advised Plaintiff in Case No. 22-3298 that:

    the United States Supreme Court has made clear that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *See Edwards v. Balisok*, 520 U.S. 641,

Plaintiff's claims relate to the evidence used in his state criminal prosecution. He alleges various causes of action, including: due process violations; fraud upon the court; perjury; mishandling of evidence; bad faith destruction of evidence; manufacturing evidence; failure to produce "original electronic data disc" from windows; collusion; obstruction of justice; manifest injustice; tampering with evidence; failure to investigate; deprivation of constitutional rights; access to the courts; falsified affidavit information; failure to disclose; concealment; deliberate indifference; failure to preserve potentially exculpatory evidence; unauthorized (consumption) of DNA sample; prosecutorial misconduct; false video footage; erroneous interpretation of evidence; conspiracy; fabricated testimony; overt acts; erroneous evidence; contempt of court; abuse of discretion; clear cut malicious prosecution; consuming (all) DNA sample; denied discovery information; and failure to train. (Doc. 1–1, at 2–3.)

Plaintiff's claims center on his alleged denial of the opportunity to re-test biological evidence in his criminal trial. Plaintiff claims that the prosecutors did not comply with the production order and failed to produce "the original electronic disc" to the defense, and failed to turn over the actual contents "of cyro [sic] tube labeled 1-88-0464 to Genetic Technologies, which was the independent lab for the defense." *Id*. at 4. Plaintiff alleges that the tube was presented at trial and was said to contain the rape kit swabs and "panty cuttings." *Id*. at 4–5. Plaintiff claims he was not allowed to re-test these items before his trial. *Id*. at 4. Plaintiff claims that his defense attorney did not adopt Plaintiff's pro se motion asking the court to turn over the contents of the tube for re-testing, and the trial court denied Plaintiff's motion for

---

643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). Thus, to the extent that the current complaint asserts arguments that, if successful, would necessarily imply the invalidity of the related state-court convictions, those arguments would be subject to dismissal unless Plaintiff can demonstrate that those convictions have been invalidated.
*Shields v. City of Olathe, Kansas*, Case No. 22-3298-JWL, Doc. 3, at n. 2 (D. Kan. Dec. 7, 2022).

ineffective assistance of counsel.  *Id*. at 5.  Plaintiff alleges that this prevented him from showing his innocence.

Plaintiff also claims that the defendants and lab technicians who touched the DNA samples "and consumed them" deprived Plaintiff of due process "by intentionally destroying (exculpatory) biological dna evidence 'in bad faith' to frame [Plaintiff] for murder." *Id*. at 7.

Plaintiff asks this Court to "retain" a copy of his state court record, including transcripts of all hearings, discovery, and the original electronic date (source code) information.  *Id*. at 6. Plaintiff also asks this Court to:  allow him to re-test the evidence;  hire and select a team of investigators to inspect his claims; award compensatory damages; and freeze all defendants' assets or estates until negotiations are complete "as to how [Plaintiff] is going to receive payments." *Id*. at 6–7.

Plaintiff names as defendants:  the Unified Government of Wyandotte County; the City of Olathe, Kansas; the Office of the Kansas City, Kansas District Attorney; the Kansas City, Kansas Police Department; Terry Mast, Detective, Kansas City, Kansas Police Department; (fnu) Showmin, Detective, Kansas City, Kansas Police Department; Johnson County Criminalistic Laboratory; Gary Dicks, Johnson County Criminalistic Laboratory; Vallery Fornow, Johnson County Criminalistic Laboratory; Kansas Bureau of Investigation; Barbra Crim Swanson, Kansas Bureau of Investigation; James Newman, Kansas Bureau of Investigation; Daniel Obemier, Prosecutor, Office of the Kansas City, Kansas District Attorney; Jennifer Tatum, Prosecutor, Office of the Kansas City, Kansas District Attorney; David Smith, Prosecutor, Office of the Kansas City, Kansas District Attorney; (fnu) (lnu), all analysts or chemists who touched DNA evidence or assisted in the consumption of DNA samples; David Greenwald, Prosecutor, Office of the Kansas City, Kansas District Attorney; Mark Dupree, Head District Attorney,

Office of the Kansas City, Kansas District Attorney; Genetic Technologies; and Jamie Harmon, Genetic Technologies.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### 1.  Rule 8

Although Plaintiff's Complaint is on a court-approved form, he merely uses the form to refer to an attached affidavit and exhibits consisting of over 160 pages.  In filing an amended complaint, Plaintiff must use the court-approved form and comply with Fed. R. Civ. P. 8's pleading standards.  Plaintiff must use the form by setting forth each count of his amended complaint on the form.

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Plaintiff's Complaint fails to comply with this rule.  "It is sufficient, and indeed all that is permissible, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis.  Only a generalized statement of the facts from which the defendant may form a responsive pleading is necessary or permissible." *Frazier v. Ortiz*, No. 06-1286, 2007 WL 10765, at \*2 (10th Cir. Jan. 3, 2007) (emphasis omitted) (quoting *New Home Appliance Ctr., Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957)).

### 2.  Improper Defendants

#### A.  County Prosecutors

Plaintiff names the county prosecutors as defendants.  Plaintiff's claims against the county prosecutors fail on the ground of prosecutorial immunity.  Prosecutors are absolutely immune from liability for damages in actions asserted against them for actions taken "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Plaintiff's claims concerning his criminal cases fall squarely within the prosecutorial function.  Plaintiff is directed to show cause why his claims against the county prosecutors

should not be dismissed based on prosecutorial immunity.

Plaintiff also names the Kansas Bureau of Investigation and some of its investigators as defendants.  To the extent Plaintiff names the agency as a defendant, the entity is entitled to Eleventh Amendment immunity.  The State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment. The Eleventh Amendment presents a jurisdictional bar to suits against a state and "arms of the state" unless the state waives its immunity. *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)). Therefore, in the absence of some consent, a suit in which an agent or department of the state is named as a defendant is "proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Plaintiff also names individual investigators from the agency as defendants.  The Supreme Court has also held that the "preparation and filing of . . . charging documents" is a function of an advocate and is protected by absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997). This is because the "determination that the evidence [is] sufficiently strong to justify a probable-cause finding, [the] decision to file charges, and [the] presentation of the information . . . to the court" each involve the exercise of professional judgment.  *Id.* at 130.  The Tenth Circuit has stated that the reach of immunity extends to a district attorney's investigator. *See Joseph v. Shepherd*, 211 F. App'x 692, 697 (10th Cir. 2006).  "An investigator who prepares a criminal complaint and seeks an arrest warrant is therefore entitled to absolute immunity." *Id*. (citing *Roberts v. Kling,* 144 F.3d 710, 711 (10th Cir.1998)). "[P]rosecutorial immunity extends to certain agents of the prosecutor when they are engaged in performing tasks that are inherently prosecutorial in nature."  *Id*.  Immunity is determined by "the nature of the function [the

defendant] performed, not the identity of the actor who performed it." *Id*. (citing *Perez v. Ellington*, 421 F.3d 1128, 1133 (10th Cir. 2005)); *see also Pfeiffer v. Hartford Fire Ins. Co*, 929 F.2d 1484, 1489 (10th Cir. 1991) ("It is . . . well established that this absolute prosecutorial immunity extends to state attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings.").

### B.  Municipalities

Plaintiff names the Unified Government of Wyandotte County, and the city of Olathe, Kansas, as defendants.  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Wright v. City of Ponca City*, 2023 WL 5765848, at *7 (10th Cir. Sept. 7, 2023) (quoting *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978); *see also id*. at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.")). Instead, "the government as an entity" can only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. (quoting *Monell*, 436 U.S. at 694). To establish municipal liability a plaintiff must demonstrate the existence of a "municipal policy or custom."  *Id*. (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). Then the "plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Id*. at n.9 (citing  *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Bryson*, 627 F.3d at 788)).  Plaintiff has failed to allege a requisite custom or policy or to name a policymaker.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official

government policy for purposes of § 1983 . . . [but] [a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted).

### C.  Police Department

Plaintiff names the Kansas City, Kansas Police Department as a defendant. This defendant is subject to dismissal, as "'police departments . . . are not suable entities under § 1983, because they lack legal identities apart from the municipality.'" *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1186 (D. N.M. 2014) (quoting *Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381, 1992 WL 51481, at *2 (10th Cir. March 12, 1992)).

### 3.  Heck Bar and Habeas Nature of Claim

Plaintiff makes claims regarding his state criminal proceedings.  To the extent Plaintiff challenges the validity of his sentence in his state criminal cases, his federal claim must be presented in habeas corpus.  "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*"  *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added).  When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement.  *Heck v. Humphrey*, 512 U.S. 477, 482 (1994).  Therefore, any claim challenging his state conviction and sentence is not cognizable in a § 1983 action.

Likewise, before Plaintiff may proceed in a federal civil action for monetary damages based upon an invalid conviction or sentence, he must show that his conviction or sentence has been overturned, reversed, or otherwise called into question.  *Heck*, 512 U.S. 477.  If Plaintiff

has been convicted and a judgment on Plaintiff's claim in this case would necessarily imply the invalidity of that conviction, the claim may be barred by *Heck*.  In *Heck*, the state prisoner claimed that two prosecutors and an investigator engaged in an unlawful investigation and knowingly destroyed evidence that could have proven his innocence.  The United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487.  *See also Turner v. Pudik*, 2017 WL 549910, at *3 (W.D. Pa. 2017) (finding judgment in favor of plaintiff on his argument that exculpatory evidence was destroyed where detective failed to preserve blood samples, "would necessarily imply the invalidity of his state court conviction") (citing *Miller v. Commonwealth of Pennsylvania*, 588 F. App'x 96, 97 (3d Cir. 2014) (state prisoner's § 1983 claim concerning an alleged failure to preserve exculpatory evidence that could have proven his innocence was barred by *Heck*); *Spuck v. Clearfield Co., Pennsylvania*, 540 F. App'x 73, 74–75 (3d Cir. 2013) (§ 1983 claims related to alleged destruction or refusal to turn over exculpatory evidence necessarily implied invalidity of state conviction and were barred by *Heck*)).

In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order.  *Heck*, 512 U.S. at 486–87.  Plaintiff has not alleged that his conviction or sentence has been invalidated.

Plaintiff must comply with the exhaustion of state court remedies requirement prior to bringing a federal habeas action.  *Id.* at 482; *see also Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief); *see* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of available state court remedies).  "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982).

Plaintiff did not raise a claim challenging the biological evidence in his direct appeal.  In affirming his conviction, the Kansas Supreme Court summarized the factual background of Plaintiff's criminal proceedings as follows:

> In 1988, two victims were found shot to death in a ditch in Wyandotte County.  Investigators developed no solid leads, and the case went cold until DNA testing tied Melvin Shields to the killings 15 years later.  Despite the DNA test results, prosecutors declined to file charges for another decade because no murder weapon had been recovered.  But the State eventually changed course and charged Shields with two counts of first-degree premeditated murder.  A jury convicted Shields on those charges. He now appeals directly to our court to challenge the jury's verdict.
>
> Shields asks us to reverse his convictions based on seven separate claims of trial error.  For the most part, Shields' arguments fail to establish error.  But the district court did err in one respect:  it should have provided a cautionary instruction to the jury on the reliability of eyewitness identifications. . . . Despite this error, we affirm Shields' convictions.  Shields did not request the cautionary instruction at trial.  Thus, we cannot reverse his convictions unless the failure to give the instruction was clearly erroneous. . . . We are not convinced that a cautionary instruction would have changed how the jury resolved that question of fact and, ultimately, its verdict.

* * * *

Fourteen years later, a detective reviewing the case ordered DNA testing of the cigarette butts, J.J.'s underwear, and samples collected as part of a sexual examination during J.J.'s autopsy. The results established that Shields was a possible contributor. Shields' fingerprints were also matched to those recovered from J.J.'s car. Even so, the prosecutor responsible for the case declined to charge Shields without first recovering a murder weapon.

More than a decade later in 2016, a different prosecutor decided that the State should pursue the case and charged Shields with two counts of felony murder, which occurs when a person kills someone while committing, trying to commit, or fleeing from certain felonies designated as "inherently dangerous." See K.S.A. 2020 Supp. 21-5402(c). Together with the DNA and fingerprint evidence described above, the State's case at trial depended on the eyewitness testimony of J.J.'s cousin Reginald Reed, who identified Shields as a man he twice saw in J.J.'s car on the day of her disappearance.

* * * *

After the jury convicted Shields of two counts of premeditated first-degree murder, the district court sentenced him to two consecutive sentences of life imprisonment with no possibility of parole for 15 years. Because the district court imposed a sentence of life imprisonment, Shields appealed directly to the Kansas Supreme Court.

*State v. Shields*, 511 P.3d 931, 939–40 (Kan. 2022).

The Kansas Supreme Court found that Plaintiff's remaining challenges failed to establish error. *Id*. at 944. In addition to his challenge to the instruction regarding eyewitness identification, Plaintiff also raised the following six additional challenges before the Kansas Supreme Court:

First, Shields argues his convictions are not supported by sufficient evidence. Second, he argues the 13-year delay between the DNA testing and the State's decision to charge him violated his federal constitutional rights. Third, he argues the district court abused its discretion by admitting photos of J.J.'s autopsy and photos of the

> victims before their deaths.  Fourth, he argues the district court should not have given an aiding-and-abetting instruction.  Fifth, he argues the prosecutor erred during closing argument.  And sixth, he argues the cumulative effect of several errors warrants reversal.

*Id*.

Therefore, it does not appear that Plaintiff has raised his claims in state court.  He did not raise them in his direct appeal, and the docket for his state criminal case does not show that he has filed a K.S.A. 60-1507 petition.  *See State v. Shields*, Case No. 2016-CR-293 (District Court of Wyandotte County, Kansas).  The docket reflects that Plaintiff filed a motion for an extension of time to file a 60-1507 petition on June 30, 2023, but does not show a ruling on the motion or the filing of a 60-1507 petition.  *Id*.

### 6. Relief

Plaintiff asks this Court to obtain his state court record, to allow him to re-test the evidence, and to  hire and select a team of investigators to inspect Plaintiff's claims.  His claims suggest he seeks to reopen and retry his criminal case.  *See Bray v. Gary Police Dep't Chief*, 2010 WL 2674531, at *2 (N.D. Ind. 2010) (where plaintiff sought to have the court set aside his criminal conviction and order that he be retried, court held his claim must be brought by means of a petition for writ of habeas corpus). This Court cannot order State courts to open or close cases.  *See Presley v. Presley*, 102 F. App'x 636, 636–37 (10th Cir. 2004) (holding that any federal court order for "investigation or prosecution of various people for various crimes" would "improperly intrude upon the separation of powers").

The federal mandamus statute, 28 U.S.C. § 1361, grants the federal district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, a suit seeking mandamus relief under this provision must name a federal

officer or employee as a respondent. *See Rivers v. King*, 23 F. App'x 905, 908 n.4 (10th Cir. 2001) ("[T]his court has no jurisdiction to mandamus state officials because the statutory power to grant such writs is provided only against federal officials."); *see also Amisub (PSL), Inc. v. Colo. Dept. of Soc. Servs.*, 879 F.2d 789, 790 (10th Cir. 1989) ("No relief against state officials or state agencies is afforded by § 1361."); *see also Austin v. Dist. Attorney's Office of Northampton Cty.*, 2022 WL 1774129, at *3 (E.D. Pa. 2022) (finding "request for relief that would essentially reopen and redo his closed state criminal proceedings does not seek relief 'in aid of' the Court's jurisdiction") (citation omitted).  Plaintiff has not provided any legal authority under which the Court could award the relief he seeks.

## IV. Motion for Evidentiary Hearing

Plaintiff has filed a motion seeking an evidentiary hearing with witnesses.  (Doc. 3.) Because this case has not passed screening, any request for an evidentiary hearing is premature. The Court will deny the motion without prejudice.

## V.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why Plaintiff's Complaint should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.  To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action,

including those to be retained from the original complaint.

Plaintiff must write the number of this case (23-3183-JWL) at the top of the first page of the amended complaint and must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motion for evidentiary hearing (Doc. 3) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **October 20, 2023,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **October 20, 2023**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated September 21, 2023, in Kansas City, Kansas.**

<u>**S/ John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**